NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240745-U

NO. 4-24-0745

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 27, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 18JA93 |
| v. | ) | |
| Corey G., | ) | Honorable |
| Respondent-Appellant). | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Respondent father, Corey G., appeals from the trial court's judgment terminating his parental rights to his son, A.S. (born May 2013). On appeal, respondent's appellate counsel moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the ground no issue of arguable merit can be raised. For the reasons that follow, we grant appellate counsel's motion and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4    The parental rights of the minor's mother were also terminated during the proceedings below. She is not, however, a party to this appeal. The following is gleaned from the record presented as it relates to respondent.

¶ 5                                    A. Neglect and Wardship

¶ 6        In March 2018, the State filed a petition for adjudication of wardship, alleging the minor was neglected in that he was subject to an environment injurious to his welfare while living with his mother and his mother's paramour. See 705 ILCS 405/2-3(1)(b) (West 2018). Later that year, the trial court found the minor to be neglected and made him a ward of the court. The court further, after making a finding of fitness, placed guardianship and custody of the minor with respondent and ordered respondent to complete services. Guardianship and custody of the minor were later removed from respondent and placed with the Illinois Department of Children and Family Services (DCFS). The removal occurred following a September 2019 hearing, where respondent appeared and the State presented evidence of respondent's failure to provide adequate care for the minor. Over the years that followed, respondent repeatedly appeared with counsel for permanency hearings, and guardianship and custody of the minor were never returned to him.

¶ 7                              B. Petition to Terminate Parental Rights

¶ 8        In October 2023, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was an unfit parent in that he failed to make reasonable progress toward the return of the minor to his care within a nine-month period following the minor's adjudication of neglected (750 ILCS 50/1(D)(m)(ii) (West 2022)), namely October 7, 2022, to July 7, 2023. The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint DCFS as guardian, with the power to consent to adoption.

¶ 9                                      C. Fitness Hearing

¶ 10       In March 2024, the trial court held a fitness hearing. The State presented testimony from the caseworker who had been assigned to the minor's case since 2018, as well as the court appointed special advocate who had been assigned to the minor's case since 2019, both of whom

respondent's counsel cross-examined. The State also presented certified visitation records from October 7, 2022, to July 7, 2023, to which respondent's counsel objected, and the court overruled the objection. And last, the State asked the court to take judicial notice of the entire court file, to which respondent's counsel objected, and the court sustained the objection; the court took judicial notice of only the pleadings and orders in the court file. Respondent did not present any evidence. The following is gleaned from the evidence presented.

¶ 11 Respondent was ordered to complete a parenting class. He completed the class prior to the relevant period alleged in the State's petition to terminate parental rights.

¶ 12 Respondent was ordered to obtain and maintain suitable housing. During the relevant period, he resided at a shelter. Respondent was evicted from his prior residence in August 2022. He had exhausted community funds available for housing assistance. In December 2022 or January 2023, respondent reported he was working with the shelter to obtain an apartment. He also reported he would have an apartment by January or February 2023. Respondent did not obtain an apartment. The minor's caseworker testified the shelter where respondent resided did not constitute suitable housing for a child because it did not have adequate space and, as reported by respondent, was in an area "with drugs, prostitution, and guns."

¶ 13 Respondent was ordered to obtain and maintain employment. During the relevant period, respondent was employed. He did not, however, provide the minor's caseworker with documentation of his income. He reported to the caseworker he owed back rent of approximately $1800 for a prior apartment.

¶ 14 Respondent was ordered to complete a psychological evaluation. During the relevant period, respondent did not complete the evaluation. The evaluation stemmed from a recommendation from a mental health assessment, which noted a possible autism diagnosis.

Respondent missed the appointment for the evaluation in February 2023. The provider to whom respondent was referred refused to schedule additional appointments because respondent's repeated contact with the provider "was on the verge of harassment." The minor's caseworker made referrals with other providers for respondent to complete the evaluation.

¶ 15 Respondent was ordered to attend visitation with the minor. During the relevant period, respondent missed at least 20 scheduled visits. Additionally, incidents occurred during visits respondent attended which made the minor feel uncomfortable. For instance, the minor reported respondent had stated to someone that the minor's mother was on drugs and was dead during a visit in January 2023.

¶ 16 Respondent was ordered to cooperate with the minor's caseworker and the agency assigned to monitor the welfare of the minor. During the relevant period, respondent (1) stated he did not want to meet with the minor's caseworker or the agency, (2) called the minor's caseworker "a name," and (3) stated the minor's caseworker would "be fired" because she did not do her job and was not accurate.

¶ 17 The minor's caseworker believed respondent was not an appropriate placement for the minor during the relevant period because he had not obtained suitable housing or completed a psychological evaluation. The caseworker acknowledged a prior permanency goal was the return of the minor to respondent's care.

¶ 18 The trial court, after considering the evidence and arguments before it, found respondent was an unfit parent for the reason alleged in the State's petition.

¶ 19 D. Best-Interest Hearing

¶ 20 Over a two-day period in March and April 2024, the trial court held a best-interest hearing. At the commencement of the second day of the hearing, the court entertained a motion

filed by respondent's counsel. Respondent's counsel argued (1) the State did not prove respondent's unfitness by clear and convincing evidence, (2) the court lost jurisdiction after it placed guardianship and custody of the minor with respondent, and (3) the State violated respondent's due process and/or statutory rights when it sought to remove guardianship and custody of the minor from respondent without first providing written notice. After considering the arguments before it, the court denied the motion.

¶ 21    Both the State and respondent presented testimony from the caseworker who had been assigned to the minor's case since 2018. Additionally, respondent presented testimony from the guardian *ad litem* (GAL) who also had been assigned to the minor's case since 2018. The following is gleaned from the testimony presented.

¶ 22    The minor, who was 10 years old at the time of the best-interest hearing, had been in his foster placement, a licensed foster home, since late 2019. The minor was bonded to his foster parent, whom he referred to as "grandma" and "ma," and his foster siblings. The foster parent provided for the minor's needs of food, shelter, and clothing. The foster parent also provided for the minor's emotional needs. The bond between the minor and his foster parent was described as "loving" and "affectionate." The minor expressed a feeling of safety and love while with his foster parent. The minor expressed a desire to remain in his current placement. The foster parent expressed a willingness to provide the minor with permanency through adoption.

¶ 23    The minor was bonded to respondent and was cared for by him early in this case. The minor did not want to be returned to respondent's care but wanted to continue a relationship with him. The minor had expressed safety concerns while with respondent. At times, the minor would want to end visitations early. The GAL referred to respondent's mental health as "very unstable." The minor reported having seen respondent talking to his reflection. Respondent had

not completed a psychological evaluation or obtained stable housing. Respondent had repeatedly rejected a guardianship arrangement with the minor's foster parent.

¶ 24        The minor's caseworker and GAL believed it would be in the minor's best interest to terminate respondent's parental rights. The minor's caseworker did not believe guardianship could provide the minor with the stability and permanency he needed.

¶ 25        After considering the evidence and arguments presented, as well as the statutory best-interest factors, the trial court found it would be in the minor's best interest to terminate respondent's parental rights.

¶ 26        The trial court entered a written order terminating respondent's parental rights. Thereafter, respondent filed a timely notice of appeal, and the court appointed appellate counsel to represent respondent.

¶ 27        This appeal followed.

¶ 28                                II. ANALYSIS

¶ 29        On appeal, appellate counsel moves to withdraw as counsel pursuant to *Anders* on the ground no issue of arguable merit can be raised on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86, 732 N.E.2d 140, 143 (2000) (holding *Anders* applies to termination of parental rights cases and providing the proper procedure to be followed by appellate counsel). Counsel indicates she e-mailed respondent a copy of the motion and supporting memorandum, along with a letter advising him of the motion's filing in this court and the fact he would have the opportunity to respond to it. Counsel further indicates she provided respondent with the address of this court for the purposes of filing any response. This court, in turn, mailed respondent a notice informing him of counsel's motion and granting him the opportunity to file a response. Our notice was later returned with a notation indicating respondent no longer resided at the address to which the notice

was mailed. An addendum to a best-interest report contained within the record indicates respondent did not provide the minor's caseworker with a recent address, despite the caseworker's inquiries. Due to respondent's failure to update his address with the minor's caseworker, his counsel, or this court, we are without an address to provide respondent notice of his right to file a response. Respondent has not filed a response.

¶ 30                                  A. Jurisdictional Finding

¶ 31          Appellate counsel indicates she considered contesting the trial court's finding that it had jurisdiction but concluded any argument in support thereof would be frivolous. We agree. Contrary to the argument of respondent's trial counsel, the court did not lose jurisdiction when it placed guardianship and custody of the minor with respondent early in the proceedings. Rather, jurisdiction remained, as the court maintained wardship and did not close the case. See 705 ILCS 405/2-31(2) (West 2022) ("Whenever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged."); *In re Jaron Z.*, 348 Ill. App. 3d 239, 253-54, 810 N.E.2d 108, 120-21 (2004). We likewise note, contrary to the suggestion of respondent's trial counsel, any purported failure to include the requisite statutory findings in later permanency orders would not have affected the court's jurisdiction.

¶ 32                                  B. Unfitness Finding

¶ 33          Appellate counsel indicates she considered contesting the trial court's unfitness finding but concluded any argument in support thereof would be frivolous. We agree.

¶ 34          In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial

court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 35        Section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)) provides, in pertinent part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *Id.* at 216-17.

In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007).

¶ 36        In this case, the record shows respondent was referred to and did not complete the psychological evaluation during the relevant period. Additionally, respondent failed to obtain suitable housing. Setting aside the issues with respondent's attendance at visitations, the record shows respondent's failures with respect to the psychological evaluation and housing prevented the trial court from returning the minor to respondent's care. We therefore agree any argument contesting the court's unfitness finding would be frivolous.

¶ 37                           C. Best-Interest Finding

¶ 38          Appellate counsel indicates she considered contesting the trial court's best-interest

finding but concluded any argument in support thereof would be frivolous. We agree.

¶ 39          In a proceeding to terminate parental rights, the State must prove termination is in

the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367, 818

N.E.2d 1214, 1228 (2004). When considering whether termination of parental rights would be in

a child's best interest, the trial court must consider several statutory factors within the context of

the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2022).

¶ 40          This court will not reverse a best-interest finding unless it is against the manifest

weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010).

Again, a finding is against the manifest weight of the evidence only where the opposite conclusion

is clearly apparent. *Id.*

¶ 41          In this case, the record shows the minor, who was 10 years old at the time of the

best-interest hearing, had been in his foster placement for almost half of his life. The minor's needs

were being met in his placement, and the minor's foster parent was willing to provide the minor

with permanency through adoption. Conversely, respondent had not obtained suitable housing or

completed a psychological evaluation and, therefore, could not safely care for the minor. While

respondent's trial counsel suggested guardianship would allow for a continued relationship

between respondent and the minor, the record showed respondent had previously rejected the idea

of guardianship with the minor's foster parent. Ultimately, the minor's need for permanency and

stability supports the trial court's best-interest finding. We agree any argument contesting the

court's best-interest finding would be frivolous.

¶ 42                    D. Findings With Respect to the Prior Proceedings

¶ 43    Appellate counsel indicates she also considered contesting the trial court's findings with respect to the proceedings which preceded the termination proceedings but concluded any argument in support thereof would be frivolous. We agree. Initially, this court is without authority to address the judgment finding the minor to be neglected and making him a ward of the court. See *In re Leona W.*, 228 Ill. 2d 439, 456, 888 N.E.2d 72, 81 (2008). Additionally, to the extent there was an error relating to the State's failure to provide respondent written notice of the allegations of unfitness to remove guardianship and custody of the minor from him, the error was harmless. The record shows respondent was present at the hearing, the State presented evidence of respondent's failure to provide adequate care for the minor, respondent appeared with counsel at later permanency review hearings, and respondent did not raise the issue until more than four years after the removal.

¶ 44                    III. CONCLUSION

¶ 45    Because the record reveals no issue of arguable merit can be raised on appeal, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 46    Affirmed.